UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CLARENCE ANTOINE DANIELS — CIVIL ACTION

VERSUS — NUMBER: 18-5292

JUSTIN RESTER, ET AL. — SECTION: "S"(5)

**ORDER AND REASONS**

Before the Court is the motion for summary judgment of the sole Defendant remaining in this matter, Sergeant Justin Rester. (Rec. doc. 65). Plaintiff has filed no memorandum in opposition to Defendant's motion.[1/] For the reasons that follow, it is ordered that Defendant's motion is granted and that Plaintiff's suit is dismissed.

This is a 42 U.S.C. §1983 proceeding that comes before the Court upon the consent of the parties pursuant to 28 U.S.C. §636(c). (Rec. doc. 39). Following earlier motion practice in this case, all claims against all Defendants were dismissed except for Plaintiff's Eighth Amendment excessive-force claim against Sergeant Rester in his individual capacity. (Rec. docs. 29, 34, 45). In his complaint, Plaintiff, an inmate of the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana, complained of an incident that occurred on March 7, 2017 in which Rester allegedly yanked his arm through a "hatch tray" in his cell door, causing swelling to his wrist area and multiple lacerations. (Rec. docs. 1, 7, 19). Rester now moves for summary judgment on Plaintiff's remaining excessive force claim.

---

[1/] As Plaintiff has filed no memorandum in response to Defendant's motion, timely or otherwise, the Court may properly assume that he has no opposition to it. *Johnson v. Colvin*, No. 14-CV-0401, 2014 WL 4186790 at *1 n. 1 (E.D. La. Aug. 22, 2014)(citing Local Rule 7.5 and *Bean v. Barnhart*, 473 F.Supp. 2d 739, 741 (E.D. Tex. 2007)); *Jones v. Larpenter*, No. 13-CV-0056, 2013 WL 1947243 at *1 n. 1 (E.D. La. Apr. 12, 2013), *adopted*, 2013 WL 1947188 (E.D. La. May 10, 2013)(same); *Lucas v. Crowe*, No. 11-CV-2752, 2013 WL 870514 at *1 n. 1 (E.D. La. Feb. 15, 2013), *adopted*, 2013 WL 870437 (E.D. La. Mar. 7, 2013)(same). Of course, a motion like the Defendant's, even if unopposed, may be granted as long as it has merit. *Braly v. Trail*, 254 F.3d 1082, 2001 WL 564155 at *2 (5th Cir. 2001).

Before discussing the competent evidence supporting Defendant's motion, the Court will recall the well-established standards governing Rule 56 motions like the one at hand.

Summary judgment is appropriate under Rule 56(c) when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986). Although all inferences drawn from the evidence are to be resolved in the non-movant's favor, he may not rest on the mere allegations or denials in his pleadings. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). Rather, once a properly supported motion for summary judgment is made, the burden shifts to the non-movant, who bears the burden of proof at trial, to show with "'significant probative' evidence" that there exists a triable factual issue. *Kansa Reinsurance v. Cong. Mortgage Corp. of Texas*, 20 F.3d 1362, 1371 (5th Cir. 1994)(quoting *In re: Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982)). That burden is not satisfied by "… 'some metaphysical doubt as to the material facts,' … by 'conclusory allegations,' … by 'unsubstantiated assertions,' … or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(citations omitted). Rather, the nonmovant "… must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case; naked assertions of an actual dispute will not suffice." *Matter of Lewisville Properties, Inc.*, 849 F.2d 946, 950 (5th Cir. 1998). The insufficiency of the proof must be such that it would prevent a rational finder of fact from finding for the non-moving party. *Phillips Oil Co v. OKC Corp.*, 812 F.2d 265, 272-73 (5th Cir.), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152 (1987).

Among the arguments advanced by the Defendant in support of his motion for summary judgment is his entitlement to qualified immunity. "Qualified immunity protects

government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lytle v. Bexar County, Texas*, 560 F.3d 404, 409 (5th Cir. 2009)(citation and internal quotation marks omitted); *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006)(citing *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987)). In determining whether a governmental official is entitled to qualified immunity, the appropriate inquiry is: (1) whether the plaintiff has demonstrated a violation of a clearly established constitutional right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known. *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508 (2002)). Those two prongs may be considered in either order. *Pearson v Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 818 (2009). In the summary judgment context, qualified immunity shifts the burden of proof to the plaintiff. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Thus, in order to rebut Sergeant Rester's qualified immunity defense here, Plaintiff must establish that: (1) the Defendant's allegedly wrongful conduct amounted to excessive force in violation of the Eighth Amendment and (2) a genuine issue of material fact exists regarding the reasonableness of the Defendant's conduct. *Id.*

It is well-established that the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Hudson v. McMillan*, 503 U.S. 1, 5, 112 S.Ct. 995, 998 (1992). In evaluating a claim of alleged use of excessive force by a prison official, the Supreme Court has opined that "... the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.*, 503 U.S. at 6-7, 112 S.Ct. at 999. In order to

prevail on such a claim, a plaintiff must first prove up a subjective component by establishing that "… the defendant acted maliciously and sadistically in an 'unnecessary and wanton infliction of pain.'" *Mosley v. White*, 464 Fed.Appx. 206, 211-12 (5th Cir. 2010)(quoting *Hudson*, 503 U.S. at 8, 112 S.Ct. at 1000). To make this determination, a court should consider: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible official; and (5) any efforts made to temper the severity of a forceful response. *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998); *Hudson v. McMillan*, 962 F.2d 522, 523 (5th Cir. 1992).

In addition to the subjective component, a plaintiff must also establish an objective component, which requires that a prisoner demonstrate that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Hudson*, 503 U.S. at 8, 112 S.Ct. at 999. Not every malevolent touch, push, or shove by a prison official gives rise to a federal cause of action. *Id.* at 9, 112 S.Ct. at 1000. "Thus, a party's claim must allege more than a *de minimis* use of physical force in order to state a *prima facie* case of an Eighth Amendment violation." *Mosley*, 464 Fed.Appx. at 212 (citing *Eason v. Holt*, 73 F.3d 600, 604 n. 24 (5th Cir. 1996)). "The *de minimis* use of physical force is excluded from 'constitutional recognition,' unless it is of a sort 'repugnant to the conscience of mankind.'" *Id.* (quoting *Hudson*, 503 U.S. at 9-10, 112 S.Ct. at 1000). Although there is no categorical requirement that the physical injury be significant, serious, or more than minor, "… it is clear that some physical injury is required." *Lacey v. Galveston County Sheriff's Dept.*, No. 06-CV-0441, 2008 WL 624615 at *6 (S.D. Tex. Mar. 5, 2008). If a prisoner fails to establish either the

subjective or objective components, "… there is not a valid Eighth Amendment claim." *Mosley*, 464 Fed.Appx. at 212.

RCC Directive #3.1.13 provides that "… handcuffs will be applied to offenders behind their back with the thumbs up, palms out, and the keyhole pointed out." (Rec. doc. 65-6, p. 3). The Directive goes on as follows:

> When applying handcuffs behind the back of cellblock offenders, the officer will give the offender instructions to place his back to the cell door and place his hands through the cell trap with his thumbs up and palms out. The officer will place one cuff on one of the offender's wrists with the double bar up and the keyhole facing out. Control of the handcuffs will be maintained while the other bracelet is applied in the same manner. The officer will ensure that the handcuffs are not placed too tightly on the offender's wrists by placing his/her little finger between the handcuffs and the inside of the offenders' wrist and then tightening the cuffs until snug. The handcuffs will then be double locked.
>
> Restraints will be removed in reverse order.

*Id.* at p. 4.[2/]

The Court has carefully reviewed the central pieces of evidence supporting Defendant's motion, namely, two segments of video footage taken from surveillance cameras situated within RCC which capture the incident in question and the events immediately preceding and following it. In the first clip, Sergeant Rester can be seen first restraining and then escorting Plaintiff from the shower area of Sleet 4L back to his cell located on the same tier. In compliance with Directive #3.1.13 set forth above, Plaintiff dutifully turned around and placed his back to the cell door of the shower area, placed his hands through the trap in the cell door, and the handcuffs were successfully applied to his wrists by Rester, at which point Plaintiff steps away, turns, and faces the cell door. The

[2/] This Directive has been in place since at least 2014. (*See* rec. doc. 20-2, pp. 2, 3 in No. 13-CV-4773).

shower cell door is then opened and Rester begins escorting Plaintiff to his cell, cell number 8. (Ex. B).

Once Plaintiff and Rester arrived at cell number 8, Plaintiff entered the cell and Rester ordered the cell door to be closed. Plaintiff initially complied with the Directive by turning around and placing his back and cuffed wrists to the cell door to allow Rester to remove the handcuffs through the cell trap. After Rester had successfully removed the handcuffs from Plaintiff's left wrist, Plaintiff suddenly and without warning began to turn around and attempted to pull his right handcuffed wrist from Rester's control and into his cell. At that point, in an effort to maintain control of the handcuffs, Rester immediately pulled the handcuffs that remained attached to Plaintiff's right wrist through the tray hatch and attempted to go to a sitting position to use his body weight to counter the resistance being offered by Plaintiff. Within mere seconds, Rester is able to gain control over Plaintiff's right arm and he stands up to begin his second attempt to remove the handcuffs. Sergeant Nathaniel Graham arrives on the scene shortly thereafter and assists Rester by gaining control of Plaintiff's left arm and bringing it through the bars. Once that was accomplished, Rester continues his attempt to remove the handcuff remaining on Plaintiff's right wrist only to discover that the key had broken due to Plaintiff's resistance. Sergeant Graham can then be seen using his cuff key to remove the remaining cuff from Plaintiff's right wrist. The handcuffs were fully removed from Plaintiff's right wrist and all force stopped immediately. Based upon a review of the video, it does not appear that Plaintiff was in any apparent pain or distress. From the time that the door to Plaintiff's cell was closed until the handcuffs were fully removed from his wrists was less than one minute. (Ex. C).

Following the incident, Plaintiff, Rester, and Sergeant Graham were all evaluated by Nurse Luper for a post use of force exam. The records documenting that evaluation reveal that Plaintiff suffered only abrasions/redness to his right upper arm with no injuries to his wrist or multiple lacerations as alleged by Plaintiff in his complaint. (Rec. doc. 65-9, pp. 4-5). Plaintiff was subsequently seen by medical personnel on March 9 and 22, 2017 for unknown pain to his right arm and was treated only with Motrin. (*Id.* at pp. 2, 3).

In *Wilkins v. Gaddy*, 559 U.S. 34, 38, 130 S.Ct. 1175, 1178-79 (2010) the Supreme Court reaffirmed its earlier holding in *Hudson* that courts evaluating Eighth Amendment excess force claim must focus on the nature of the force applied rather than a certain quantum of injury. Nevertheless, the "absence of serious injury," the first of the five factors identified by the Fifth Circuit in cases such as *Baldwin* and *Hudson*, remains a relevant consideration in evaluating an Eighth Amendment claim. *Wilkins*, 559 U.S. at 37-38, 130 S.Ct. at 1178. The Fifth Circuit has thus found "strain" to a prisoner's arm to be a *de minimis* injury excluded from constitutional recognition. *Preston v. Hicks*, 721 Fed.Appx. 342, 344-45 (5th Cir. 2018). Injuries falling within this category also include momentary blindness, cuts and abrasions in and around the eye, and an infected eye, *Mosley*, 464 Fed.Appx. at 213; a "busted lip" and headaches, *Lee v. Wilson*, 237 Fed.Appx. 965, 966 (5th Cir. 2007); and, a sore, bruised ear lasting three days. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). Other courts have similarly concluded that allegations of swelling and pain to the hand which was treated with ice and painkillers were *de minimis*, *Bangmon v. Lance*, No. 18-CV-0019, 2019 WL 5653731 at *5 (S.D. Tex. Oct. 30, 2019), and that for a particular injury to be constitutionally significant and actionable, it would have to be more than a sore muscle, an aching back, a scratch, an abrasion, or a bruise of the type which would not

otherwise force a free-world person to seek professional medical care. *Luong v. Hatt*, 979 F.Supp. 481, 486 (N.D. Tex. 1997). *See also Spivey v. Wilson*, No. 17-CV-0094, 2019 WL 5095629 at *9 (E.D. Tex. Sept. 27, 2019)(contusions and three small lacerations treated with Dermabond and Tylenol were *de minimis*).

The objective findings in the medical records supporting Defendant's motion do not evince injuries consistent with the allegations set forth in Plaintiff's complaint, which may thus be considered to be implausible. *Wilburn v. Shane*, 193 F.3d 517, 1999 WL 706141 at *1 (5th Cir. 1999)(citing *Wesson v. Oglesby*, 910 F.2d 278, 281-82 (5th Cir. 1990). Because Plaintiff has failed to submit any summary judgment evidence controverting the Defendant's evidence and establishing that he suffered more than a *de minimis* physical injury as a result of the March 7, 2017 incident (or that Rester's use of force was repugnant to the conscience of mankind), summary judgment on the basis of qualified immunity is warranted here. *Mosley*, 464 Fed.Appx. at 213 (in summary judgment context, Plaintiff bears evidentiary burden to show that injuries were objectively "harmful enough"); *Wilson v. Taylor*, 100 Fed.Appx. 282, 283 (5th Cir), *cert. denied*, 543 U.S. 965, 125 S.Ct. 413 (2004). Having carefully viewed the video evidence, the Court is also left with the inescapable conclusion that the brief use of force employed by Rester, which lasted less than one minute, was applied in a good-faith effort to maintain and restore discipline and was not done maliciously or sadistically to cause harm and resulted in an unnecessary and wanton infliction of pain. *Hudson*, 503 U.S. at 6-8, 112 S.Ct. at 999-1000. For these reasons, Defendant's motion for summary judgment is granted and Plaintiff's suit is dismissed. Judgment will be entered accordingly.

New Orleans, Louisiana, this 23rd day of September, 2020.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE